UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

**CHRISTOPHER JAMES LIVSEY**                                                            **PLAINTIFF**

v.                                                 Civil No. 4:17-cv-04078

**NANCY A. BERRYHILL, Commissioner**                                     **DEFENDANT**
**Social Security Administration**

**MEMORANDUM OPINION**

Christopher James Livsey ("Plaintiff") brings this action pursuant to §205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C §405(g) (2010), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("SSA") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Act.

The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 5.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background**:

On August 11, 2014, Plaintiff protectively filed his application. (Tr. 253). In his application, Plaintiff alleges he was disabled due to flattened and compressed spine in neck, depression, scoliosis, and 30% of use in left hand with an alleged onset date of January 31, 2014.

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ____" The transcript pages for this case are referenced by the designation "Tr. ___"

1

(Tr. 282, 286). The claim was denied initially on September 22, 2014, and again upon reconsideration on January 14, 2015. (Tr. 187, 193).

Thereafter, Plaintiff requested an administrative hearing on his application, and this hearing request was granted. (Tr. 200). An administrative hearing was held on May 26, 2016, in Texarkana, Arkansas with the Administrative Law Judge ("ALJ") holding the hearing remotely from McAlester, Oklahoma. (Tr. 95). At the administrative hearing, Plaintiff was present and was represented by a non-attorney representative, Stanley Brummal. (Tr. 93-128). Plaintiff and Vocational Expert ("VE") Melissa Brassfield testified at this hearing. *Id*. On the date of this hearing, Plaintiff testified his highest level of education was a high school diploma. (Tr. 99).

On August 17, 2016, the ALJ entered an unfavorable decision on Plaintiff's application. (Tr. 45-51). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2016. (Tr. 47, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 31, 2014, his alleged onset date. (Tr. 47, Finding 2). The ALJ determined Plaintiff had the following severe impairments: left shoulder sprain, degenerative disc disease of the lumbar spine, thoracic outlet syndrome, degenerative disc disease of the cervical spine, status-post discectomy and fusion, affective disorder, and anxiety disorder. (Tr. 47-48, Finding 3). The ALJ, however, also determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 48, Finding 4).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 49-52, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and

determined they were not entirely credible. *Id*. Second, the ALJ determined Plaintiff retained the RFC for the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) and 416.967(b) with only occasional pushing, pulling, and overhead reaching with his left arm; is limited to unskilled work (where tasks are no more complex than those learned and performed by rote, with few variables and little judgement); his supervision must be simple, direct and concrete and non-critical; interpersonal contact with supervisors and co-workers must be incidental to the work performed, e.g., assembly work; he must have normal, regular work breaks and only occasional workplace changes.
> *Id.*

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW") and determined he was incapable of performing any of his past relevant work. (Tr. 52, Finding 6). The ALJ did, however, determine Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy, specifically that of a conveyor line bakery worker or a bottling attendant. (Tr. 52-53, Finding 10). The ALJ found Plaintiff was 35 years old, which is defined as a younger individual under the Act. (Tr. 52, Finding 7). The ALJ concluded Plaintiff had not been under disability under the Act from January 31, 2014, through the date of his decision. (Tr. 53, Finding 11).

Plaintiff requested the Appeals Council review the ALJ's unfavorable disability determination. (Tr. 1, 250). On March 17, 2017, the Appeals Council declined to review the ALJ's disability determination. (Tr. 1-4). Plaintiff filed the present appeal on September 14, 2017. ECF No. 1. The Parties consented to the jurisdiction of this Court on September 15, 2017. ECF No. 5. Both Parties have filed appeal briefs. ECF Nos. 13, 14. This case is now ready for decision.

## 2. **Applicable Law**:

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. §423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. § 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In his appeal brief, Plaintiff alleges his case should be reversed and remanded for the following reasons: (A) the ALJ erred by failing to take Plaintiff's subjective complaints into consideration; (B) the ALJ erred in finding Plaintiff did not meet listings 1.04 and 1.02 and (C) the ALJ failed to resolve the conflict between the vocational testimony and the Dictionary of Occupational titles, and failed to present a hypothetical that addressed all impairments and limitations. (ECF No. 13). In response, Defendant argues that there is no basis for reversal in this case. ECF No. 14. The Court will address each of these arguments.

## A. Credibility Analysis

Plaintiff alleges that the ALJ improperly minimized his allegations of pain based solely on the fact that Plaintiff was able to sit through the hearing. ECF No. 13 at 12. Plaintiff contends that the ALJ did not have sufficient basis to afford Plaintiff's subjective complaints less credibility, as the record shows that Plaintiff "has had pain off and on for a number of years." ECF No. 13 at 12.

In his decision the ALJ noted claimant's ability to walk easily, sit comfortably for 40 minutes, and was able to hold the armrest with his left hand for ten to fifteen minutes. (Tr. 50). The treatment record shows that while Plaintiff did report difficulties with his left arm to his treating physician, those reports were that his left arm had tingling and severe pain with numbness described only when he elevated the arm over the shoulder. (Tr. 507, 510). As discussed above, Dr. Thompson opined Plaintiff's numbness and tingling in his left arm was caused by cervical stenosis and should be resolved by surgery. (Tr. 490, 505). Plaintiff reported his pain level as an eight on a scale of one to ten at the hearing, and stated he was not on any pain medication. (Tr. 108). The ALJ noted verbally at the hearing that Plaintiff looked comfortable walking in, swung back and forth comfortably in his chair, and that he was unable to detect any obvious expression of pain from Plaintiff. (Tr. 108). At the request of the ALJ Plaintiff demonstrated how far he could raise his arms, and he was able to reach above his head with his right arm but not his left. (Tr. 109-110). Plaintiff testified that he was unable to pick up his fifteen pound baby but could hold her if she was handed to him. (Tr. 112). He further testified that he could pick up about five pounds regularly. (Tr. 112). Plaintiff testified that the neck surgery did not help at all for any period of time, and also that his only pain management at the

time of the hearing was over-the-counter pain medication and a TENS unit which he wore almost all of the time for the last two years. (Tr. 116-117). Plaintiff testified that he could sit for only fifteen to twenty minutes at a time before he would have to move, and that he could only sit for about one hour out of an eight-hour day. (Tr. 117-118).

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) or from 20 C.F.R. § 404.1529 and 20 C.F.R. § 416.929. *See Shultz v. Astrue*, 479 F.3d 979, 983 (2007). The factors to consider are as follows: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. See *Polaski*, 739 at 1322.

The factors must be analyzed and considered in light of the claimant's subjective complaints of pain. *See id*. The ALJ is not required to methodically discuss each factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel*, 226 F.3d 969, 971-72 (8th Cir. 2000). As long as the ALJ properly applies these five factors and gives several valid reasons for finding that the Plaintiff's subjective complaints are not entirely credible, the ALJ's credibility determination is entitled to deference. *See id.; Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). The ALJ, however, cannot discount Plaintiff's subjective complaints "solely because the objective medical evidence does not fully support them [the subjective complaints]." *Polaski*, 739 F.2d at 1322.

When discounting a claimant's complaint of pain, the ALJ must make a specific credibility determination, articulating the reasons for discrediting the testimony, addressing any inconsistencies, and discussing the *Polaski* factors. *See Baker v. Apfel*, 159 F.3d 1140, 1144 (8th

7

Cir. 1998). The inability to work without some pain or discomfort is not a sufficient reason to find a Plaintiff disabled within the strict definition of the Act. The issue is not the existence of pain, but whether the pain a Plaintiff experiences precludes the performance of substantial gainful activity. *See Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

In the present action, the ALJ complied with the requirements of *Polaski*. His credibility determination was not based solely upon the objective medical evidence, but rather upon Plaintiff's testimony and inconsistencies in the Plaintiff's own reports. The ALJ considered Plaintiff's report that his daily activities included light household chores, caring for his dogs, counting change, shopping in stores, and helping a babysitter care for his baby. (Tr. 48, 313, 315, 316). The ALJ considered Plaintiff's subjective reports of pain and noted that while Plaintiff testified he was unable to sit for more than ten to fifteen minutes at a time, and no more than an hour each day, Plaintiff sat through the forty-minute hearing with no visible or verbalized problems. (Tr. 50). The ALJ also noted that despite Plaintiff's assertion that his daily pain level was at an eight on a scale of one to ten, he made no expression of pain during the hearing and was not on any pain medications. (Tr. 50). With regards to limitations in his left hand, Plaintiff testified that he could not hold anything with that hand, but the ALJ observed Plaintiff holding the armrest on his chair with his left hand for fifteen minutes with no expression of discomfort or difficulty holding onto it. (Tr. 50).

The ALJ did not completely discredit Plaintiff's complaints of limited functionality with his left harm and accounted for those limitation in his RFC assessment by limiting Plaintiff's work to only occasionally pushing, pulling and overhead reaching with his left arm.

8

Based upon the foregoing, the Court finds substantial evidence to support the ALJ's credibility analysis.

**B. Analysis under listings 1.02 and 1.04**

Plaintiff claims the ALJ committed error in finding that Plaintiff did not meet listings 1.02 and 1.04. ECF No. 13 at 13. Plaintiff argues he meets listing 1.04 due to his cervical herniated disc at C5-6 with left median neuropathy, and subsequent surgery with no improvement. ECF No. 13 at 13. Plaintiff does not specify whether he qualifies under subparagraph A, B, or C for this listing. However, as there is nothing in the record to suggest Plaintiff suffers from spinal arachnoiditis, the Court will examine only subparts A and C. The record shows that Plaintiff experienced numbness and tingling as well as some weakness in his left arm prior to his surgery. (Tr. 380-381, 401). Both Dr. Thompson and Dr. Willis determined that surgery on Plaintiff's cervical spine was most likely to ameliorate these symptoms. (Tr. 490, 563, 595). Roughly a month before surgery Dr. Willis noted decreased strength and grip strength in Plaintiff's left arm, noting that his arm trembled when trying to lift his daughter. (Tr. 600). Dr. Willis performed surgery on the C5-C6 portion of Plaintiff's cervical spine, and post-operatively noted that the X-rays were good. (Tr. 574, 593). However, Plaintiff reported complaints of right shoulder pain and neck pressure even post-surgery. (Tr. 593). There is a paucity of medical records for roughly a year after the surgery, until after the administrative hearing. The hearing was held on July 5, 2016, and the record was closed at that time. (Tr. 97). At the hearing Plaintiff testified that he still had some symptoms, particularly neck pain and numbness and tingling after the surgery, but that he had not been back to his surgeon. (Tr. 104-105). Plaintiff testified he had an appointment to see

Dr. Willis for a year after the surgery, but his wife had been pregnant, and he'd missed the appointment and not been back since that time. (Tr. 106).

Listing 1.04 requires evidence of disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord WITH:

**A.** Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Or

**B.** Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

Or

**C.** Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

In order to meet this listing Plaintiff would need to show his spinal stenosis or degenerative disc disease had resulted in compromise of a nerve root or the spinal cord. However, the last time he was seen by his surgeon the records show that his diagnostics looked good and there was no further MRI or other diagnostic test in the relevant time period showing a that his spinal cord or

any nerve root were compromised. (Tr. 593). Moreover, the record does not show adequate evidence to meeting subpart A, B, or C.

In order meet listing 1.02 Plaintiff would need to show evidence of:

A major joint dysfunction characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s); and

A. Involvement of one major peripheral weight bearing joint (i.e. hip, knee, or ankle) resulting in an inability to ambulate effectively, as defined in 1.00(B)(2)(b);

or

B. Involvement of one major peripheral joint in each upper extremity, resulting in inability perform fine and gross movements effectively, as defined in 1.00B2c.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

In Plaintiff's brief he argued that he met listing 1.02 because he cannot perform fine and gross manipulation. Under the meaning of the act the inability to perform fine and gross movements effectively includes examples such as "the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a cabinet at or above waist level." *See* 20 C.F.R pt. 404 subpt. P., appl. 1, §1.00B2c. Plaintiff made no allegations that he was unable to perform these sorts of activities.

After considering these findings, the court finds the ALJ's findings were supported by substantial evidence.

### C. Hypothetical to Vocational Expert

Plaintiff argues that the ALJ erred in not considering all of the plaintiff's limitations, particularly his asthma, ability to use his left hand, and mental impairments. (ECF No. 13 at 14-17). "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (citing *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006)). The ALJ's hypothetical question included all the limitations found to exist by the ALJ and set forth in the ALJ's RFC determination. Id. Based on the Court's previous conclusion that the ALJ's RFC findings are supported by substantial evidence, the Court holds that the hypothetical question was proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits. Id., see also *Lacroix*, 465 F.3d at 889.

### 4. Conclusion:

Based on the foregoing, the undersigned finds the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

ENTERED this 26th day of September 2018

        /s/ Barry A. Bryant
        HON. BARRY A. BRYANT
        U.S. MAGISTRATE JUDGE